IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Bridgett D. Bennett,<br><br>      Plaintiff,<br><br>vs.<br><br>New Foundations Children and Family Services, Inc.,<br><br>      Defendant. | Civil Action No. 8:08-557-HFF-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

This matter is before the Court on the defendant's motion for summary judgment [Doc. 31] pursuant to Federal Rule of Civil Procedure 56. The plaintiff has pled claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981.[1] The plaintiff contends that her employment was terminated on account of her race.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## **FACTUAL BACKGROUND**

The defendant is a residential treatment facility for children and adolescents from ages 10 to 21, many of whom have been mistreated, abused, and/or neglected. (Hayes Aff. ¶ 5.) The plaintiff was hired by the defendant, on or about October 31, 2003, as a part-time Counselor I for the High Management Group Home program. (Id. ¶ 6; Pl. Dep. at 11-12.)

On or about September 25, 2004, the defendant held its Annual Fun Day for clients and their families. The plaintiff was scheduled to work on such date and was thus involved

---

[1] In fact, her State Court Complaint only contains a cause of action pursuant to Section 1981. But both parties characterize her claim as one arising under Title VII. (Pl. Resp. at 2; Def. Mem. Supp. Summ. J. at 4.) Regardless, the two causes are comparably considered, under the circumstances.

in supervision of clients during the Fun Day activities. ((Hayes Aff. ¶ 8; Bennett Dep. at 23-24.)

On or about September 29, 2004, Vernon Hayes, the Chief Executive Officer of the defendant and a black male, was informed that the plaintiff had allegedly brought her nephew to the Family Fun Day and instigated an altercation between her nephew and one of the defendant's client residents. (Hayes Aff. ¶ 9.) Hayes received this information from Tarinda Lowden, Treatment Coordinator, and Shirley Epps, Supervisor. *Id*. Those individuals had been notified of the incident by an Allison Martin, a counselor who was in attendance at the Family Fun Day. *Id*. As a result, Hayes investigated the incident and prepared an incident report. *Id*. ¶ 10. He interviewed Martin, who indicated that she had been at the event and that the plaintiff, upon introducing her nephew to the client resident stated, "Here he is. Talk junk now you said you could beat him up." *Id*. ¶ 11.

Hayes then spoke with a Will Simmons, Head Counselor; Demetrick Tinsely, Supervisor; and Shannon Williams, Counselor, all of whom were present at the event. *Id*. ¶ 12. To varying degrees, these individuals corroborated portions of Martin's account. *Id*. Hayes then contacted the plaintiff by telephone. *Id*. ¶ 13. In that conversation, the plaintiff allegedly admitted that she had, in fact, introduced her nephew to the client and that her nephew had removed his shirt. *Id*. Since, the plaintiff has made no such admission. *Id*. ¶ 14.

On October 4, 2004, Steve Dean, Director of Residential Services and Hayes met with the plaintiff. *Id*. ¶ 14. The plaintiff brought four supporting witnesses to that meeting. (Pl. Dep. at 39; Hayes Dep. at 24.) Hayes does not recall their presence, but the plaintiff claims that he refused to hear from them. *Id*. At the meeting, the plaintiff's employment was terminated for for inciting, and failing to descalate, a crisis situation with a client, in violation of company policy. (Hayes Aff. ¶ 14.) The defendant also states, as a basis for

2

termination, the fact that the plaintiff recanted the original version of the incident, offered over the phone, at the October 4 meeting.

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position

3

is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

### I.    Race Discrimination

As stated, the plaintiff contends that she was terminated on account of her race in violation of Title VII and Section 1981 and not for any violation of company policy, as alleged by the defendant.

As the Fourth Circuit has explained in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), a Title VII plaintiff may "avert summary judgment . . . through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (emphasis added). A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as

4

to whether an impermissible factor such as race motivated the employer's adverse employment decision. *Diamond*, 416 F.3d at 318. Pursuant to the 1991 Act, the impermissible factor need not have been the sole factor. As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. *See* 42 U.S.C.A. § 2000e-2(m). Alternatively, a plaintiff may "proceed under [the McDonnell Douglas ] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285.

The plaintiff contends that she survives summary judgment under the *McDonnell Douglas* burden-shifting proof scheme. *McDonnell Douglas* requires that an employee first prove a *prima facie* case of discrimination by a preponderance of the evidence. If she succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff, because " [i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." *Id.* at 147 (citation omitted). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* It is the plaintiff's burden to create an inference that the defendant's proffered reason is a

5

pretext for intentional discrimination. *See id.* at 147-48. Pretext analysis does not convert Title VII into a vehicle for challenging unfair--but nondiscriminatory--employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir.1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *See Ross* v. *Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985) *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

### A. *Prima Facie* Case

To establish a *prima facie* case of discriminatory discharge, the plaintiff must show: (1) that she is a member of a protected class; (2) that she suffered from an adverse employment action; (3) that at the time the employer took the adverse employment action she was performing at a level that met her employer's legitimate expectations; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances. *See Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 133 (4th Cir. 2002). The defendant contends that the plaintiff can establish neither the second nor the fourth element of her *prima facie* case.

In regards to whether the plaintiff was meeting the defendant's legitimate performance expectations, the defendant contends that the plaintiff's employment was terminated for her alleged violation of defendant's company policy by failing to de-escalate a confrontation between her nephew and a client of the defendant, which she herself allegedly instigated. (Hayes Aff. ¶ 15.) The plaintiff does not disagree that if such facts were true that the defendant would be permitted to characterize her work performance and behavior as having fallen below the defendant's legitimate expectations. Instead, the plaintiff contends that the defendant's evidence in this regard comes in the form of inadmissible hearsay statements of Hayes, included in his affidavit. Namely, Hayes has relied on representations of other employees of the defendant. The Court believes, however, that Hayes knowledge of the incident, at issue, has come either directly from the

6

plaintiff (Hayes Aff. ¶ ), or an employee of the defendant (Hayes Aff. ¶ ). In either case, the statements would be admissible insofar as they are admissions of a party opponent.

Regardless of the admissibility of the defendant's evidence, however, the Court agrees issues of fact remain. The plaintiff has responded that she did not introduce her nephew to the defendant's client or have any knowledge of the confrontation until she was told about it afterwards. (Pl. Dep. at 31, 37.) For purposes of the *prima facie* case, the parties' respective accounts stand at odds with each other and the Court cannot make the relative credibility determination on summary judgment. The plaintiff's testimony, no matter how self-serving, creates a dispute as to what occurred on that day and whether the plaintiff was meeting the defendant's performance expectations.

It is true that, when considering the authenticity of the defendant's legitimate, non-discriminatory reason at the final stage of the *McDonnell Douglas* proof scheme, the relevant inquiry is not whether the reason was right or fair but whether it was truly the reason held by the defendant. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000). But, the Court believes that at the *prima facie* stage, the second element seeks to establish whether or not the plaintiff was, in fact, actually performing to expectations and not simply whether the defendant *believed* she was. This seems the right conclusion because the *prima facie* case is a tool to establish, in the most general sense, that the circumstances surrounding the adverse employment action were minimally suspicious. If a plaintiff can establish that he or she was actually performing to expectations, then even a mistaken view of that performance might be permissibly viewed with caution in the absence of some other explanation for the misperception. Those "other" explanations seem better examined at the pretext stage. Accordingly, the Court would find the second element satisfied.

As to whether similarly situated employees outside the protected class received more favorable treatment than the plaintiff, however, the Court disagrees that issues of fact exist.

7

The defendant argues that the "plaintiff must establish that 'other employees' were similarly situated in all relevant respects; that they 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *See Ward v. City of North Myrtle Beach*, 457 F. Supp. 2d 625 (D.S.C. 2006). The Court believes that the fourth element is slightly more flexible in its demands. "The precise requirements of a prima facie case can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (U.S. 2002) (quotations omitted). At this stage, the Court would remain broadly open to evidence that similarly situated employees outside the protected class received more favorable treatment. *See White v. BFI Waste Servs.*, LLC, 375 F.3d 288, 295 (4th Cir. 2004).

Allison Martin, a white employee of the defendant, appears to be the principal witness to the incident and accuser of the plaintiff. (Def. Ex. 1.) Martin was employed in the position of part-time counselor, the same position that the plaintiff held. (Def. Ex. 1 ¶¶ 6, 11.) The plaintiff contends that the defendant's consideration of Martin's accusations regarding the Family Fun Day in comparison to its consideration of her own account, evidences differential treatment between a black and white employee holding the same position. Specifically, the plaintiff contends that Hayes met with Martin in person (Def. Ex. 1 ¶ 11) but only spoke with the plaintiff for 5 minutes by telephone before deciding to suspend her (Hayes Dep. at 27; Def. Ex. at 3). The plaintiff also emphasizes that while the accounts of Martin's corroborating witnesses were considered, Hayes would not hear the accounts of four individuals the plaintiff brought to the meeting, in which she was suspended, including the nephew in question and two supervisors of the defendant, at least one of whom was in attendance at the Family Fun Day event. (Pl. Dep. at 39; Hayes Dep. at 24.)

8

The Court would not say that this evidence is immaterial, but it is difficult to conclude that the plaintiff and Martin were "similarly situated" sufficiently, such that their respective treatment can be a point of comparison. While both women held competing versions of the same events, to be measured by the defendant and arguably subjected to differing standards of evaluation, Martin was not under any allegation of misconduct; the plaintiff was. So, it would seem less than instructive to allow a jury to make inferences regarding the treatment of employees of two different races, where the employee of the race outside the protected class was not the subject of any accusation of misconduct. As the defendant contends, to be "similarly situated" has traditionally required that the individuals have, in the least, "engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *See Ward*, 457 F. Supp. 2d at 643. Without such point of common reference, a justifiable basis of any reasonable comparison seems wanting. The Court cannot recommend that the plaintiff has put forward evidence from which a reasonable jury could conclude that the fourth element of her *prima facie* case had been satisfied.

But, even were the district court to disagree, and conclude that a *prima facie* case could be made, the undersigned would still recommend dismissal on account of the plaintiff's failure to demonstrate that the defendant's legitimate, non-discriminatory basis for termination was pretextual.

### B. Legitimate, Non-discriminatory Reason

The defendant has advanced the following non-discriminatory reasons for terminating the plaintiff's employment: its belief that the plaintiff violated Policy No. 6.01(2)(k) by disregarding safety requirements and/or violation of policy; that the plaintiff violated Policy 3.04 by failing to follow TCI requirements regarding de-escalating a crisis situation; that she instigated and/or contributed directly to the conflict between her nephew and the New Foundations client; and that she gave inconsistent accounts of the events

9

when questioned. Violations of a company policy constitute legitimate and non-discriminatory reasons for the termination of employment. *See Holiday v. New Hanover County Registrar of Deeds*, 317 Fed. Appx. 344, 345 (4th Cir. 2009) (per curium); *Cupples v. AmSan, LLC*, 282 Fed. Appx. 205, 209 (4th Cir. 2008).

The plaintiff contends that the manner in which the incident was investigated renders these reasons non-legitimate. The Court cannot see it. While a want of investigation might cast doubt on the credibility of the reason, the reason, itself, on its face, is legitimate and non-discriminatory. That is the only proffer the defendant is required to make at this stage. *See McDonnell Douglas*, 411 U.S. at 802-03. The Court will address the relevance of the quality of the investigation in more detail below.

**C. Pretext**

Because the defendant has proffered legitimate, non-discriminatory reasons for its actions, the plaintiff bears the burden of demonstrating that the real reason for the termination was, in fact, an unlawful one. *See Reeves*, 530 U.S. at 142-43. As is most common, the plaintiff attempts to satisfy this burden by suggesting that the defendant's proffered reasons are pretextual or false. *See id.* at 144. More precisely, the plaintiff contends that the defendant has advanced a false reason concerning inconsistent statements of the plaintiff such that its entire explanation is not worthy of credence.

Specifically, the defendant has stated that one of the reasons for the plaintiff's termination was that she gave inconsistent statements on the telephone to Hayes and in the subsequent meeting on October 4, 2004, regarding her recollection of the Family Fun Day incident. (Def. Mem. Supp. Summ. J. at 4; Def. Ex. 1 ¶14.) The plaintiff, however, has put forward persuasive evidence that the defendant had already made the decision to terminate the plaintiff prior to the October 4, 2004 meeting, when the alleged inconsistent statement was made. (Dean Dep. at 9, 16.) Hayes, himself, has admitted as much.

10

(Hayes Dep. at 25.) The plaintiff, therefore, accuses the defendant of fabricating a false reason for the plaintiff's termination.

It is true that shifting or false reasons raise questions of pretext. *See Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext.") . But such is not the case here. Simply because the defendant had already decided to terminate the plaintiff's employment, prior to October 4, does not mean that the plaintiff did not give the defendant an additional reason for termination by offering what the defendant interpreted as a new or disingenuous account. The plaintiff does not actually contest that inconsistent statements were offered, as far as the Court can tell. Rather, she attempts to contend that once the decision was made to terminate her employment, the defendant was somehow prohibited from arriving at other rationale for the same action. The Court is unaware of any such rule. She has offered no evidence that the inconsistent-statements basis was untrue or that the defendant believed it was untrue. Rather, she has offered evidence only of the chronology of the accrual of the respective reasons. But it is no surprise or smoking gun that the defendant could not have made any decision based on the offer of inconsistent statements until such inconsistent statement was actually offered, on October 4. To the Court, that is not the same as an after-proffered *false* reason. The reason is not false; it is simply second.

Next, the plaintiff reaffirms her concerns over the type of investigation made of the incident. The Court admits that there is evidence that not all relevant information was considered. Particularly, Krystal Gambrell, Treatment Coordinator and the plaintiff's immediate supervisor, has expressed concern that the investigation was narrowly conducted; that she was not consulted; and that she had not observed, on the day in question, any opportunity for the plaintiff to have incited the type of incident alleged at the Family Fun Day. (Gambrell Dep., Ex. 3.)

11

For the sake of argument and taking the plaintiff's evidence as it lies, the Court would assume a less than adequate investigation – potentially even a negligent one. Unfortunately, the Court finds such evidence insufficient. The plaintiff is not entitled to an even, fair, or just investigation. Pretext analysis does not convert Title VII into a vehicle for challenging unfair--but nondiscriminatory--employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir.1989). The Court imagines that some set of circumstances might exist where the handling of a termination is so obviously biased as to raise serious questions worthy of a jury's consideration. The plaintiff has not offered any illustrative cases, however. But, here, an investigation was made. Witnesses were interviewed. The plaintiff offers testimony and witnesses of her own, but she does not seriously challenge the actual credibility of the evidence relied upon by the defendant. She does not make any real attempt to contest the genuineness of the defendant's reasons, whether mistaken or not.

To that end, the defendant need not be *right* in its conclusions about the plaintiff. It may have made a terrible mistake about the Family Fun Day. And, that mistake may have been a product of lazy process. Such facts, even if demonstrated beyond any question, would not, however, change the determination of the Court. The inquiry under Title VII and Section 1981 is not whether the decision was "wise, fair or correct,' but whether [the defendant] honestly believed those reasons and acted in good faith upon those beliefs.'" *Kaster v. Safeco Ins. Co. Of Am.*, 212 F. Supp. 2d 1264, 1274 (D. Kan. 2002). To that end, the defendant has put forward evidence that Hayes made the decision to terminate the plaintiff's employment and that he made a good-faith decision based on the facts before him, whether complete or not. The plaintiff cannot prevail on her discrimination claim without evidence that the decision maker did not honestly believe that she had violated company policy. *See Brown v. Conopco, Inc.*, 2007 WL 3224586, at *8 (D. Md. October 24 2007) ("What matters is that Unilever honestly believed she was, and believed Mr. Brown had fraudulently claimed the day as FMLA leave when in fact it was not being used for that

12

purpose."); *Waggoner v. City of Garland*, 987 F.2d 1160, 1156-66 (1993) ("[T]he inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief."). The plaintiff has offered no such evidence.

The Court does not dismiss the inadequacy of the investigation lightly. But, the plaintiff has offered the thinnest of *prima facie* cases, if she has one at all. Combined only with evidence of an investigation, less thorough than would have been preferred, the plaintiff's case does not create sufficient implications associated with the *race* of the plaintiff such that a jury should be allowed to choose race as the cause of a sloppy investigation over incompetence, indifference, or simple oversight. It would be sheer conjecture on their part and not the kind of reasoned analysis that circumstantial evidence and the inferences permitted by *McDonnell Douglas* would allow.

The Court does not believe that evidence exists creating any issue of fact as to the defendant's non-discriminatory reason for termination. Because the plaintiff lacks effective evidence of the fourth element of her *prima facie* case and of pretext, the Court is constrained to recommend that the defendant's motion for summary judgment be granted.[2]

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment [Doc. 31] be GRANTED as to all claims pending against it.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

January 12, 2010
Greenville, South Carolina

---

[2] For all these same reasons and because they are similarly considered, the plaintiff's 42 U.S.C. § 1981 claim, must fail. *See Gairola v. Virginia Dep't of General Services*, 753 F.2d 1281, 1285 (4th Cir. 1985).